BNDAOV

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: 0:16−mj−06526−AOV All Defendants
## *Internal Use Only*

Case title: USA v. Steele

Date Filed: 12/16/2016
Date Terminated: 12/19/2016

Assigned to: Magistrate Judge Alicia O. Valle

**Defendant (1)**

**John L. Steele**
14421−104
*YOB:1971 English*
*TERMINATED: 12/19/2016*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |

| **Complaints** | **Disposition** |
| --- | --- |
| 18:1349.F CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD | |

**Plaintiff**

| **USA** | represented by | **Bruce Brown** |
| --- | --- | --- |
| | | United States Attorney's Office |
| | | 500 E Broward Boulevard |
| | | 7th Floor |
| | | Fort Lauderdale, FL 33301−3002 |
| | | 954−356−7255X3514 |
| | | Fax: 356−7336 |

1

Email: bruce.brown2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/16/2016 | 1 | 3 | Magistrate Removal of Indictment from DISTRICT OF MINNESOTA Case number in the other District CR−16−334−JNE/KMM as to John L. Steele (1). (at) (Entered: 12/16/2016) |
| 12/16/2016 | | | Set Hearings as to John L. Steele: Initial Appearance − Rule 5(c)(3)/40 set for 12/16/2016 11:00 AM in Fort Lauderdale Division before FTL Duty Magistrate. (at) (Entered: 12/16/2016) |
| 12/16/2016 | | | Arrest of John L. Steele (dby) (Entered: 12/16/2016) |
| 12/16/2016 | 2 | 39 | Minute Order for proceedings held before Magistrate Judge Alicia O. Valle: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to John L. Steele held on 12/16/2016. Bond set: John L. Steele (1) $100,000 PSB AND $100,000 10%. (Digital 12:23:45) (Signed by Magistrate Judge Alicia O. Valle on 12/16/2016). (at) (Entered: 12/16/2016) |
| 12/16/2016 | 3 | 40 | Order to Unseal as to John L. Steele re 1 Magistrate Removal In. (Signed by Magistrate Judge Alicia O. Valle on 12/16/2016). (at) (Entered: 12/16/2016) |
| 12/16/2016 | 4 | 41 | WAIVER OF REMOVAL HEARING Rule 5(c)(3)/Rule 40 Hearing by John L. Steele (at) (Entered: 12/16/2016) |
| 12/19/2016 | 5 | 42 | $100,000 PSB Bond Entered as to John L. Steele Approved by Magistrate Judge Alicia O. Valle. *Please see bond image for conditions of release.* (at) (Additional attachment(s) added on 12/19/2016: # 1 Restricted Bond with 5th Page) (at). (Entered: 12/19/2016) |
| 12/19/2016 | 6 | 52 | $100,000 10% PSB Bond Entered as to John L. Steele Receipt # FLS 000008694. Approved by Magistrate Judge Alicia O. Valle. *Please see bond image for conditions of release.* (at) (Additional attachment(s) added on 12/19/2016: # 1 Restricted Bond with 5th Page) (at). (Entered: 12/19/2016) |
| 12/19/2016 | 7 | 63 | ORDER OF REMOVAL ISSUED to District of MINNESOTA DISTRICT as to John L. Steele Closing Case for Defendant. (Signed by Magistrate Judge Alicia O. Valle on 12/16/2016). (at)<br><br>**NOTICE: If there are sealed documents in this case, they may be unsealed after 1 year or as directed by Court Order, unless they have been designated to be permanently sealed. See Local Rule 5.4 and Administrative Order 2014−69.** (Entered: 12/19/2016) |

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CR 16.334 JNE/KMM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| | ) | |
| Plaintiff, | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1341 |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1956(h) |
| PAUL R. HANSMEIER and | ) | 18 U.S.C. § 371 |
| JOHN L. STEELE, | ) | 18 U.S.C. § 2 |
| | ) | |
| Defendants. | ) | |

16-6526-Valle

THE UNITED STATES GRAND JURY CHARGES:

### OVERVIEW

1.    Between 2011 and 2014, defendants Paul R. HANSMEIER and John L. STEELE orchestrated an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country. In order to carry out the scheme, the defendants used sham entities to obtain copyrights to pornographic movies—some of which they filmed themselves—and then uploaded those movies to file-sharing websites in order to lure people to download the movies.  To learn the identities of the people caught in the trap they constructed, HANSMEIER and STEELE filed specious copyright infringement lawsuits and fraudulently procured permission from courts to send subpoenas to internet service providers for subscriber information associated with the IP addresses used to download their pornographic movies.  After receiving this information, the defendants—through extortionate letters and phone calls—threatened the subscribers with enormous financial penalties and public embarrassment unless the

SCANNED
DEC 1 4 2016
U.S. DISTRICT COURT MPLS

U.S. v. Paul Hansmeier et al.

subscribers agreed to pay a settlement, all the while concealing their collusion in the alleged copyright infringement. When courts restricted their ability to sue multiple individuals in the same lawsuit, the defendants shifted tactics. They filed lawsuits falsely alleging that computer systems purportedly belonging to their sham clients had been infiltrated by hackers, and then recruited ruse defendants against whom they brought these illusory "hacking" lawsuits. Finally, when courts became suspicious of the defendants' tactics and motives, the defendants began a long process of lies and deceit designed to conceal the truth and deflect responsibility from themselves. In total, the defendants obtained approximately $6,000,000 made possible by the fraudulent copyright lawsuits they peddled to courts throughout the country.

## INTRODUCTION

At times relevant to this Indictment:

2.     Defendant Paul R. HANSMEIER was an attorney licensed to practice law in the State of Minnesota.

3.     Defendant John L. STEELE was an attorney licensed to practice law in the State of Illinois.

4.     Under both the Minnesota and Illinois rules of professional conduct governing attorneys, HANSMEIER and STEELE owed a duty of "candor" to the court not to make false statements or cause false statements to be made to any court, and to correct any false statements that had already been made. In an *ex parte* proceeding—where only

2

<u>U.S. v. Paul Hansmeier et al.</u>

one of the parties to a lawsuit are communicating with a judge—HANSMEIER and STEELE were obligated to advise the court of all material facts, whether or not the facts were adverse to their position.

5. In a lawsuit, parties generally participate in a "discovery" process whereby they are able to obtain potentially relevant information and documents from the opposing party as well as third parties. Under certain circumstances, a party to a lawsuit may be able to obtain "early" discovery—before it would normally be available to the party—through an *ex parte* proceeding in order to obtain evidence necessary to allow the lawsuit to proceed, such as the identity of the opposing party. If the evidence is in the possession of a third party, the person seeking early discovery must obtain permission from the court to send a "subpoena" to the third party, which compels the third party to turn over the evidence.

### *BitTorrent*

6. BitTorrent websites, including a website named the Pirate Bay, allow users to share movies or other copyrighted files with one another without paying any fees to the copyright holder. Many BitTorrent websites store their servers in foreign countries, allow users to participate anonymously (only requiring a user-generated screen-name), and take other measures to cloak the activities taking place on the website.

7. Under the "BitTorrent" protocol, an initial "seeder" uses BitTorrent software to divide a video (or other file) into small pieces and creates a "torrent" file, which contains

3

U.S. v. Paul Hansmeier et al.

metadata about the file and about the computer/server that coordinates distribution of the file, which is referred to as the "tracker." The "seeder" then uploads the torrent file to a file-sharing website such as Pirate Bay, and makes the partitioned video available to other users. Individuals interested in obtaining the video—referred to as "peers" or "users"—first download the torrent file from the file-sharing website and open the torrent file with BitTorrent software on their computers. Upon opening the torrent file, BitTorrent software contacts the tracker to find out what computers are online, and then seeks individual pieces of the video from those other computers. Initially, the pieces will be downloaded by peers directly from the seeder, but as more peers obtain pieces of the video, they will share those pieces with one another. Thus, the "seeder" does not actually "upload" the video to a website, but rather uploads a torrent file that makes it possible for individuals to obtain the video from the seeder and others.

### *Defendants' Entities and Associates*

8.    Steele Hansmeier PLLC was a law firm controlled and operated by defendants HANSMEIER and STEELE. Beginning no later than in or about 2010 and continuing at least until in or about November 2011, the defendants utilized Steele Hansmeier PLLC to bring copyright infringement lawsuits on behalf of purported clients.

9.    Prenda Law Inc. was a law firm nominally owned by an Illinois lawyer named P.D., but was in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE. Beginning in or about November 2011, and continuing until

4

<u>U.S. v. Paul Hansmeier et al.</u>

2013, defendants HANSMEIER and STEELE used Prenda Law to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

10.     Anti-Piracy Law Group was a law firm nominally owned by P.D., but in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE. In or about 2013, defendants HANSMEIER and STEELE used Anti-Piracy Law Group to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

11.     M.L. worked for HANSMEIER and STEELE. M.L. was paid a salary at various times by Steele Hansmeier PLLC and Prenda Law. M.L. generally worked as a paralegal whose duties included making phone calls and sending letters to purported copyright infringers threatening legal action unless they paid a settlement fee. M.L. worked in offices located in Chicago, Las Vegas, and Miami with STEELE, and generally took direction from STEELE.

12.     P.H. worked for HANSMEIER and STEELE. P.H. at times received payment from the defendants through entities named Media Copyright Group and 6881 Forensics. P.H. generally worked as a computer forensic consultant who monitored BitTorrent file-sharing websites and attempted to track IP addresses that downloaded or attempted to download certain pornographic movies associated with purported clients of Steele Hansmeier PLLC, Prenda Law, and Anti-Piracy Law Group. P.H. also assisted in the preparation of legal documents, such as affidavits supporting requests for early

5

U.S. v. Paul Hansmeier et al.

discovery for copyright infringement lawsuits filed by Steele Hansmeier PLLC, Prenda

Law, Anti-Piracy Law Group, and their purported clients. P.H. worked in multiple offices

located in Minneapolis with HANSMEIER, and generally took direction from

HANSMEIER.

13.     AF Holdings LLC and Ingenuity 13 LLC were entities that HANSMEIER

and STEELE caused to be founded under the laws of St. Kitts and Nevis, an island country

located in the Caribbean Sea. AF Holdings and Ingenuity 13 were purportedly owned by

a trust managed by and benefitting M.L., but HANSMEIER and STEELE were the *de facto*

owners of AF Holdings and Ingenuity 13. HANSMEIER and STEELE used AF Holdings

and Ingenuity 13 as sham clients that purportedly owned copyrights to pornographic

movies or operated computer systems associated with pornographic movies, but which the

defendants in fact owned and controlled themselves.

14.     Guava LLC, Livewire Holdings LLC, and LW Systems LLC were U.S.-

based entities that HANSMEIER and STEELE caused to be created. Guava, Livewire,

and LW Systems were purportedly owned and/or controlled by M.L., but HANSMEIER

and STEELE were the *de facto* owners of the entities. HANSMEIER and STEELE used

Guava, Livewire, and LW Systems as sham clients that purportedly owned copyrights to

pornographic movies or operated computer systems associated with pornographic movies,

but which they in fact owned and controlled themselves.

U.S. v. Paul Hansmeier et al.

## COUNT 1
(Conspiracy to Commit Mail Fraud and Wire Fraud)
18 U.S.C. § 1349

15.    The allegations contained in paragraphs 1 through 14 of this Indictment are

re-alleged as if stated in full herein.

16.    Beginning no later than in or about 2011 and continuing at least until in or

about 2014, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did knowingly conspire with each other and with others to devise and participate in a

scheme and artifice to defraud and to obtain money and property by means of materially

false and fraudulent pretenses, representations, promises, and material omissions, and for

the purpose of executing such scheme and artifice, and attempting to do so: (a) caused the

sending, delivering and receipt of various matters and things by United States Postal

Service and private and commercial interstate carrier; and (b) caused the transmission in

interstate commerce, by means of wire communications, of certain writings, signs, signals,

pictures and sounds.

17.    More specifically, beginning at least as early as 2011, and continuing until

in or about 2014, Paul HANSMEIER and John STEELE executed a scheme to fraudulently

obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal

courts throughout the country.   HANSMEIER and STEELE—both lawyers—used sham

U.S. v. Paul Hansmeier et al.

entities they controlled to obtain copyrights to pornographic movies, some of which they filmed themselves. The defendants then uploaded the movies to file-sharing websites hoping to lure people into downloading their movies. When HANSMEIER and STEELE ensnared someone in their trap, they filed false and deceptive copyright infringement lawsuits that concealed their role in distributing the movies, as well as their significant personal stake in the outcome of the litigation. After coercing courts into giving them the power to subpoena internet service providers and thereby identify the subscriber who controlled the IP address used to download the movie, the defendants used extortionate tactics to garner quick settlements from individuals who were unaware of the defendants' role in uploading the movie, and often were either too embarrassed or could not afford to defend themselves. When these individuals did fight back, the defendants dismissed the lawsuits rather than risk their scheme being unearthed. After courts began limiting the number of people that HANSMEIER and STEELE could sue in one lawsuit, they changed tactics and began filing lawsuits falsely alleging that computer systems belonging to certain of their sham clients had been "hacked" and recruited ruse defendants to smooth their path to obtain authority from courts to subpoena internet service providers. Furthermore, when courts began questioning the defendants' tactics, the defendants repeatedly lied and caused others to lie in order to conceal the true nature of their scheme.

8

U.S. v. Paul Hansmeier et al.

### Initial Copyright Infringement Lawsuits Brought by Defendants

18.     Beginning in or about September 2010, defendants HANSMEIER and STEELE—using the law firm Steele Hansmeier PLLC—began representing individuals and entities that owned copyrights to pornographic movies.   Defendants and their agents monitored file-sharing websites and obtained IP Addresses of individuals who downloaded or attempted to download their clients' movies.   Defendants then filed copyright infringement lawsuits against these anonymous individuals, sometimes referred to as "John Does," and sought authority from the court—often referred to as "early discovery"—to subpoena internet service providers for subscriber information associated with the IP Addresses.

19.     After receiving the subscriber information, defendants engaged in aggressive settlement tactics.   Defendants made phone calls and sent letters to the subscribers associated with targeted IP Addresses in which they threatened overwhelming financial penalties—the copyright statute permits plaintiffs to recover damages of up to $150,000 per infringement—and public disclosure unless the purported infringers agreed to pay a settlement of approximately $4,000.   Many of the individuals who received the defendants' letters and phone calls agreed to pay the settlement rather than incur the expense of defending the lawsuit—which would undoubtedly exceed the settlement amount—or risk being publicly shamed for allegedly downloading pornographic movies.

9

U.S. v. Paul Hansmeier et al.

## Uploading Clients' Movies to File-Sharing Websites

20.      Beginning in or about April 2011, defendants caused P.H. to upload their clients' pornographic movies to BitTorrent file-sharing websites, including a website named the Pirate Bay, in order to entice people to download the movies and make it easier to catch those who attempted to obtain the movies.   As defendants knew, the BitTorrent websites to which they uploaded their clients' movies were specifically designed to allow users to share files, including movies, without paying any fees to the copyright holders. Thus, defendants knowingly caused their clients' movies to be shared and distributed on BitTorrent websites, and thereby purposely allowed and authorized the BitTorrent users to obtain their clients' movies.

21.      Thereafter, despite colluding in the purported infringement of their clients' copyrights, HANSMEIER and STEELE caused lawsuits to be filed disingenuously alleging that the individuals who purportedly downloaded the movie did so "without authorization" or consent from the copyright holder or its agents.

22.      For example, on or about April 1, 2011, P.H. uploaded a movie named "Sexual Obsession," which was owned by a client of the defendants named Heartbreaker Productions, to the Pirate Bay.   On or about April 28, 2011, after catching approximately 71 IP Addresses engaged in downloading the movie Sexual Obsession, which defendants had caused to be uploaded, the defendants filed a lawsuit in federal court in Illinois on behalf of Heartbreaker Productions misleadingly alleging that the 71 "John Does" had

10

<u>U.S. v. Paul Hansmeier et al.</u>

downloaded the movie without "authorization or license" from Heartbreaker Productions. On or about April 29, 2011, the defendants filed an *ex parte* motion seeking to obtain early discovery regarding the identities of the subscribers associated with the 71 IP addresses, and therein falsely and misleadingly represented to the court that the John Does "without authorization[] used an online peer-to-peer ("P2P") media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public ... by making Plaintiff's copyrighted works available for distribution to others." After obtaining authority to subpoena internet service providers for subscriber information associated with the 71 IP Addresses, the defendants dismissed the lawsuit in order to "engage in settlement efforts or, if necessary, [file] separate actions."

23. Thereafter, between April 2011 and approximately December 2012, defendants HANSMEIER and STEELE caused at least approximately 200 fraudulent copyright infringement lawsuits to be filed in courts throughout the country seeking subscriber information associated with more than 3,000 IP Addresses based on the spurious allegation that certain IP Addresses were caught illegally downloading either Sexual Obsession or another movie owned by Heartbreaker Productions named "Popular Demand" from the Pirate Bay or other BitTorrent websites, which defendants themselves uploaded and made available for people to download. After filing each of the fraudulent lawsuits, HANSMEIER and STEELE filed or caused to be filed *ex parte* motions for early discovery that failed to disclose their involvement in uploading the copyrighted movies,

11

U.S. v. Paul Hansmeier et al.

and falsely accused the purported downloader of obtaining the movie without authorization or consent. Courts throughout the country, relying on the false and misleading representations made or caused to be made by the defendants, granted early discovery and thereby authorized the defendants to subpoena internet service providers for subscriber information associated with the IP Addresses set forth in the motions and/or civil complaints.

24. After receiving the subscriber information, HANSMEIER and STEELE employed the same tactics they previously used in order to garner quick settlements from the subscribers they identified. However, defendants falsely represented to the subscribers that they and their clients had legitimate copyright infringement claims against the subscriber when, in fact and as defendants knew, they had uploaded to the BitTorrent website the very movie that they now threatened to sue the subscriber for downloading. By lying to courts in order to obtain subscriber information and deceiving the subscribers, defendants fraudulently obtained numerous settlement payments.

**Defendants Attempt to Obscure Their Involvement in the Scheme**

25. In or about November 2011, in order to distance themselves from the fraudulent copyright infringement lawsuits and any potential fallout, defendants caused Prenda Law to be created. Although P.D. nominally owned Prenda Law, and at times provided assistance to HANSMEIER and STEELE in filing and overseeing the copyright litigation, HANSMEIER and STEELE exerted *de facto* control over Prenda Law, including

12

U.S. v. Paul Hansmeier et al.

the primary direction of its employees and dispensation of its finances. Despite controlling Prenda Law, and at various times filing appearances for or in connection with Prenda Law, HANSMEIER and STEELE on multiple occasions falsely denied to various courts any direct involvement with or control over Prenda Law. Beginning in or about 2013, defendants at times also used the name Anti-Piracy Law Group, which was nominally controlled by P.D., to pursue their copyright infringement and associated litigation.

26. Beginning in or about 2011, defendants also created and/or employed various sham entities, including AF Holdings, Ingenuity 13, Guava, Livewire Holdings, and LW Systems as plaintiffs or otherwise to further their fraudulent copyright lawsuits.

a. **AF Holdings.** In or about 2011, defendants convinced R.R., the owner of Heartbreaker Productions, to transfer the copyrights to Sexual Obsession and Popular Demand to AF Holdings, supposedly to insulate R.R. from negative publicity surrounding the copyright infringement lawsuits. In order to disguise their control over AF Holdings, defendants used the name of an acquaintance of STEELE—whose initials are A.C.—to purportedly sign on behalf of AF Holdings on the copyright transfer agreement. Furthermore, defendants represented and caused to be represented to multiple courts that AF Holdings was owned by a trust named "Salt Marsh" whose manager and sole beneficiary was M.L., the paralegal employed by HANSMEIER and STEELE. In fact, and as defendants knew, M.L. was nothing more than a figurehead who agreed to pose

13

U.S. v. Paul Hansmeier et al.

as the owner of AF Holdings in order to help HANSMEIER and STEELE obscure their

ownership and control over the company.

        b.    **Ingenuity 13.**  Defendants caused Ingenuity 13 to be formed, and

beginning in about 2011, defendants used Ingenuity 13 to obtain copyrights over

pornographic films, some of which they filmed themselves.  Thereafter, defendants

caused copyright infringement lawsuits to be filed on behalf of Ingenuity 13.  Defendants

at times used A.C.'s name to sign on behalf of Ingenuity 13, and on other occasions falsely

represented that Ingenuity 13 was owned or controlled by M.L.; in fact, Ingenuity 13 was

at all times controlled by the defendants, and the defendants received the proceeds of

settlement payments generated by lawsuits filed on behalf of Ingenuity 13.

        c.    **Guava.**  Defendants caused Guava to be formed, and beginning in

about 2012, defendants used Guava to file lawsuits alleging that computer systems

belonging to Guava had been hacked into, and seek early discovery regarding IP Addresses

they falsely alleged had participated in the hacking activity.  Defendants at times falsely

represented that Guava was owned or controlled by M.L.; in fact, Guava was at all times

controlled by the defendants.

        d.    **Livewire Holdings / LW Systems.**  Defendants caused Livewire

Holdings and LW Systems to be formed, and beginning in about 2013, defendants used

Livewire and/or LW Systems to file lawsuits alleging that computer systems belonging to

or associated with those entities had been hacked into, and seek early discovery regarding

14

<u>U.S. v. Paul Hansmeier et al.</u>

IP Addresses they falsely alleged had participated in the hacking activity. Defendants at times falsely represented that Livewire and LW Systems were owned or controlled by M.L.; in fact, those entities were at all times controlled by the defendants.

### Defendants Film Their Own Pornographic Movies and Upload Them to File-Sharing Websites

27.   Beginning no later than in or about May 2012, defendants filmed and caused to be filmed pornographic movies in order to further their fraudulent scheme. On at least three separate occasions, while attending pornographic film conventions in Chicago, Miami, and Las Vegas, HANSMEIER and STEELE—at times assisted by P.D., M.L., and P.H.—contracted with adult film actresses and produced multiple short pornographic films. Afterwards, HANSMEIER and STEELE caused Ingenuity 13 to obtain copyrights to the films, which bore names such as "Five Fan Favorites" and "A Peek Behind the Scenes at the Show." HANSMEIER and STEELE did not publicly distribute or commercially release the movies they filmed. Instead, HANSMEIER instructed P.H. to upload the movies to file-sharing websites such as the Pirate Bay in order to catch, and threaten to sue, people who attempted to download the movies.

28.   When the defendants caught people downloading their movies, they then caused fraudulent copyright infringement lawsuits to be filed in various courts throughout the country, which falsely alleged that certain "John Does" had downloaded Ingenuity 13's movies "without Plaintiff's authorization," and thereby concealed from the courts that the

15

U.S. v. Paul Hansmeier et al.

defendants—the lawyers behind the lawsuits—not only controlled the Plaintiff and therefore had a significant personal stake in the outcome of the litigation, but also had colluded to infringe their own copyrights by impliedly authorizing BitTorrent users to download the movies. Defendants also caused false representations to be made to the court in these lawsuits by alleging that Ingenuity 13 had suffered damages as a result of the John Does' conduct, when in fact the John Does' conduct had been the entire purpose of Ingenuity 13's existence.

### Defendants Invent Hacking Allegations

29. Beginning in or about October 2012, after courts had begun limiting the discovery defendants could obtain through copyright infringement lawsuits, HANSMEIER and STEELE caused lawsuits to be filed, generally on behalf of Guava LLC, falsely alleging that their client's computer systems had been "hacked," and that certain John Does used "hacked usernames/passwords to gain unlawful access to the member's section of [the client]'s website." The entirety of defendants' hacking lawsuits was a lie. In fact, Guava (and defendants' other phony clients) had no computer systems; they were sham entities created and controlled by the defendants for the sole purpose of obtaining lawsuit settlements.

30. After the Guava lawsuits were filed, defendants caused motions for early discovery to be filed which sought subscriber information associated with certain IP Addresses that had supposedly gained illegal access to Guava's computer systems. In

16

<u>U.S. v. Paul Hansmeier et al.</u>

fact, and as defendants' knew, the IP Addresses listed in the Guava complaints and motions
for early discovery were IP Addresses that defendants had caught downloading their or
their clients' pornographic movies through file-sharing websites on earlier occasions.

31.    In order to attempt to make the Guava lawsuits go smoothly and avoid
difficult questions by the court, HANSMEIER and STEELE also recruited one or more
ruse defendants.    The ruse defendants had been caught downloading one of HANSMEIER
and STEELE's clients' movies from a file-sharing website.    The ruse defendants agreed
that, in exchange for HANSMEIER and STEELE waiving a settlement payment, the ruse
defendant would be sued and permit HANSMEIER and STEELE to seek discovery about
his/her supposed "co-conspirators."    As defendants knew, the ruse defendants had not
participated in any hacking activity, nor had they entered Guava's computer systems with
hacked usernames and passwords.    In fact, they had downloaded movies belonging to an
entirely different entity.    Nonetheless, HANSMEIER and STEELE brought several
lawsuits against these fictitious defendants and falsely alleged that they had participated
and/or benefitted from a non-existent cabal of hackers in order to attempt to obtain
authority from the court to issue subpoenas to internet service providers to find additional
people who they could extort.

17

<u>U.S. v. Paul Hansmeier et al.</u>

**Courts Accuse the Defendants of Deception and**
**Defendants Lie to Cover Up Their Fraud**

32.    In or about early 2013, courts began scrutinizing the defendant's litigation

tactics.   Upon uncovering certain of the facts described above, courts began denying the

defendants' requests to subpoena internet service providers, dismissing lawsuits that

defendants had caused to be filed, accusing the defendants and their associates of deceptive

and fraudulent behavior, and imposing sanctions against the defendants and their associates

as a result of their misconduct.   For example, on or about May 6, 2013, the District Court

for the Central District of California issued an order imposing sanctions against the

defendants, and found that:

> Plaintiffs [including HANSMEIER and STEELE] have
> demonstrated their willingness to deceive not just this Court,
> but other courts where they have appeared.    Plaintiffs'
> representations about their operations, relationships, and
> financial interests have varied from feigned ignorance to
> misstatements to outright lies.    But this deception was
> calculated so that the Court would grant Plaintiff's early-
> discovery requests, thereby allowing Plaintiffs to identify
> defendants and exact settlement proceeds from them.   With
> these granted requests, Plaintiffs borrow the authority of the
> Court to pressure settlement.

The Court imposed monetary sanctions in the form of awarding attorneys' fees to the

opposing party, referred HANSMEIER and STEELE to their respective state attorney

disciplinary bodies, and notified all judges overseeing other copyright infringement cases

filed by the defendants and their associated entities of the Court's findings.

18

U.S. v. Paul Hansmeier et al.

33.   In order to evade detection, further their scheme, and protect the illicit profits

they had obtained, defendants repeatedly lied and caused others to lie, including but not

limited to the following:

a.      On or about November 27, 2012, the defendants caused M.L. to attend

a hearing in Sunlust Pictures LLC v. Tuan Nguyen, 12-cv-1685 (M.D. Fla), and purport to

be the corporate representative of Sunlust Pictures.   During the hearing, M.L. falsely and

misleadingly testified under oath that he did not know P.D., when in fact he did, and was

attending the hearing at the request of a woman named Sunny Leone when, in fact,

STEELE had asked M.L. to attend the hearing.

b.      On or about November 29, 2012, M.L. was deposed in Guava LLC v.

Skylar Case, 2012 L 7363 (Cook Cty Cir. Ct.), and the defendants caused M.L. to falsely

and misleadingly testify under oath that: (i) he was the VP in charge of legal matters for

Guava; and (ii) Guava maintained computer systems that were "regularly" accessed by

hackers, when in fact Guava was a shell company, M.L. had no real involvement with

Guava, and the defendants had simply invented the hacking allegations in the complaint.

c.      On or about January 25, 2013, in a hearing in Guava LLC v. Spencer

Merkel, 27-cv-1220976 (Henn. Cty Dist. Ct.), STEELE falsely and misleadingly informed

the court that Guava had "some computer equipment" in Illinois and Las Vegas and that

certain unknown "John Does" had hacked into the computer equipment, when in fact

Guava was a shell company and the defendants had simply invented the hacking allegations

19

<u>U.S. v. Paul Hansmeier et al.</u>

in the complaint. In the same hearing, STEELE falsely and misleadingly denied that the defendants had reached a "deal" with Merkel whereby in exchange for the defendants waiving Merkel's payment of any settlement fee, Merkel had agreed to be sued so that the defendants could conduct discovery.

d.    On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

e.    On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances. In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings. HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

U.S. v. Paul Hansmeier et al.

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

       f.     On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings. The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

       g.     On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

21

U.S. v. Paul Hansmeier et al.

     h.     On or about July 8, 2013, STEELE filed a complaint and caused M.L. to file a complaint with the State Bar of California against B.G., an attorney hired by HANSMEIER and STEELE to oversee copyright litigation on behalf of Prenda Law, wherein STEELE falsely and misleadingly claimed (and caused M.L. to claim) that M.L. was the manager of AF Holdings when, in fact, M.L. was merely a figurehead to obscure HANSMEIER and STEELE's control over AF Holdings.   STEELE further falsely and misleading alleged in the bar complaints that B.G. was the primary attorney for AF Holdings, thereby falsely minimizing HANSMEIER and STEELE's affiliation with and control over AF Holdings.

     i.     On or about August 26, 2013, the defendants caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Min.), wherein M.L. falsely and misleadingly represented that the membership interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries are M.L.'s unborn children, and that M.L. was AF Holdings' managing member.   In fact, AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a nominee to conceal the defendant's interest in AF Holdings.

     j.     On or about August 27, 2013, STEELE and HANSMEIER caused M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L. formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings,

22

U.S. v. Paul Hansmeier et al.

LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele, [P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney." In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings. In the same declaration, STEELE and HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he copyrights [AF Holdings] held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it"; and (iii) that litigation was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were obtained for the sole purpose of litigation and the copyrighted works were never made publically available for purchase by AF Holdings.

      k.     On or about August 28, 2013, HANSMEIER signed a declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned and controlled AF Holdings. In the same declaration, HANSMEIER falsely and

U.S. v. Paul Hansmeier et al.

misleadingly claimed that "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files of any past client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing websites.

      l.    On or about September 30, 2013, STEELE falsely and misleadingly testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.) that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer document. STEELE further testified, falsely and misleadingly, that he had "no ownership interest, never had, in Prenda Law. I didn't set up a company, bogus or otherwise, AF Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their involvement in the scheme. During this hearing, HANSMEIER (acting as an attorney for AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth above.

      m.    On or about January 28, 2014, STEELE caused M.L. to falsely and misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262 (N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and HANSMEIER did not own any part of AF Holdings. M.L. further falsely and

<u>U.S. v. Paul Hansmeier et al.</u>

misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and in the related copyright litigation.

        n.      On or about April 8, 2015, STEELE falsely and misleadingly testified under oath in a deposition in Alan Cooper v. John Steele et al., 27-cv-13-3463 (Henn. Cty Dist. Ct.), that: (a) "I did not run or manage in any way AF Holdings;" (b) M.L. "operates" AF Holdings; and M.L. "runs" Guava LLC. In fact, STEELE and HANSMEIER managed, operated, and controlled AF Holdings and Guava LLC.

        34.      In total, between 2010 and 2013, defendants and their entities received more than $6,000,000 in copyright infringement settlement payments. Of this amount, more than $3,000,000 was paid to or on behalf of Paul HANSMEIER and John STEELE. Of the remaining amount, only approximately $1,000,000 was paid to clients of HANSMEIER and STEELE, and the rest was spent on expenses associated with carrying out the scheme.

      All in violation of Title 18, United States Code, Sections 1349.

**COUNTS 2-6**
(Mail Fraud)
18 U.S.C. § 1341

        35.      The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

        36.      On or about the following dates, in the State and District of Minnesota and elsewhere, the defendants,

25

<u>U.S. v. Paul Hansmeier et al.</u>

## PAUL R. HANSMEIER and
## JOHN L. STEELE,

having devised and intending to devise the scheme and artifice described above, caused to

be sent, delivered, and moved by the United States Postal Service and private and

commercial interstate carrier various mailings, items and things for the purpose of

executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | MAILING DETAILS |
|-------|-------------------|-----------------|
| 2 | December 29, 2011 | Letter sent by Prenda Law on behalf of AF Holdings to P.M. threatening legal action unless a settlement fee of $3,400 was paid. |
| 3 | August 28, 2012 | Letter sent by Prenda Law on behalf of AF Holdings to S.Y. threatening legal action unless a settlement fee of $4,000 was paid. |
| 4 | November 7, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee of $4,000 was paid. |
| 5 | November 21, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee was paid. |
| 6 | March 26, 2013 | Letter sent by Anti-Piracy Law Group on behalf of LW Systems to P.R. threatening legal action unless a settlement fee was paid. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

<u>U.S. v. Paul Hansmeier et al.</u>

## COUNTS 7-16
(Wire Fraud)
18 U.S.C. § 1343

37.    The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

38.    On or about the following dates, in the State and District of Minnesota, the defendant,

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

having devised and intending to devise the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | WIRE DETAILS |
|---|---|---|
| 7 | January 5, 2012 | Processing and settlement of check in the amount of $2,400 from P.M. to Prenda Law |
| 8 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:   Madison Fox – Busty Beauty in Red Lingerie" to the Pirate Bay |
| 9 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:   Amy Brooke – Anal Dildo and Squirting" to the Pirate Bay |

U.S. v. Paul Hansmeier et al.

| COUNT | DATE (on or about) | WIRE DETAILS |
|---|---|---|
| 10 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Tory Lane – Pink Heels" to the Pirate Bay |
| 11 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Rosemary Radiva – Petite, Sexy Asian Plays with Herself" to the Pirate Bay |
| 12 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Spencer Scott – Playmate on a Motorcycle" to the Pirate Bay |
| 13 | August 21, 2012 | Uploading of torrent file associated with "A Peek Behind the Scenes at the Show" to the Pirate Bay |
| 14 | March 1, 2013 | Processing and settlement of Cashier's Check in the amount of $2,200 from W.W. to Prenda Law |
| 15 | March 8, 2013 | Processing and settlement of check in the amount of $1,500 from P.R. to LW Systems |
| 16 | April 10, 2013 | Processing and settlement of check in the amount of $1,200 from M.B. to Livewire Holdings |

All in violation of Title 18, United States Code, Sections 1343 and 2.

U.S. v. Paul Hansmeier et al.

## COUNT 17
### (Conspiracy to Commit Money Laundering)
### 18 U.S.C. § 1956(h)

39.  The allegations contained in paragraphs 1 through 38 of this Indictment are re-alleged as if stated in full herein.

40.  Beginning no later than in or about 2012 and continuing at least through in or about 2013, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did knowingly and willfully combine, conspire, and agree to conduct and attempt to conduct financial transactions affecting interstate commerce, namely, transfers of funds related to Under the Bridge Consulting, knowing that the property involved in the financial transactions involved proceeds of a specified unlawful activity, that is, conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

<u>U.S. v. Paul Hansmeier et al.</u>

## COUNT 18
### (Conspiracy to Commit and Suborn Perjury)
### 18 U.S.C. § 371

41.    The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

42.    Beginning no later than in or about 2012 and continuing at least through in or about 2014, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did unlawfully, knowingly, voluntarily, and intentionally combine, conspire, confederate, and agree with each other and others to commit an offense against the United States, namely to commit and suborn perjury in violation of Title 18, United States Code, Sections 1621 and 1622.

### Purpose of the Conspiracy

43.    The purpose of the conspiracy was to conceal and disguise their involvement in the scheme described in paragraphs 1 through 34 of the Indictment by providing false and misleading testimony and declarations, and causing others to provide false and misleading testimony and declarations, in cases and to courts throughout the country.

### Manner and Means of the Conspiracy

44.    The manner and means of the conspiracy are described in paragraphs 1 through 34 of the Indictment.

30

U.S. v. Paul Hansmeier et al.

## Overt Acts

45.     In order to effect the objects of the conspiracy and in furtherance of the conspiracy, the conspirators committed and caused to be committed the following specific acts, among others:

a.     On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

b.     On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances.   In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings.   HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

31

<u>U.S. v. Paul Hansmeier et al.</u>

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

        c.      On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings. The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

        d.      On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

U.S. v. Paul Hansmeier et al.

   e. On or about August 26, 2013, the defendants caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein M.L. falsely and misleadingly represented that the membership interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries are M.L.'s unborn children, and that M.L. was AF Holdings' managing member.   In fact, AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a nominee to conceal the defendant's interest in AF Holdings.

   f. On or about August 27, 2013, STEELE and HANSMEIER caused M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L. formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings, LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele, [P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney." In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings.   In the same declaration, STEELE and HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he

33

U.S. v. Paul Hansmeier et al.

copyrights [AF Holdings] held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it"; and (iii) that litigation was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were obtained for the sole purpose of litigation and the copyrighted works were never made publically available for purchase by AF Holdings.

        g.      On or about August 28, 2013, HANSMEIER signed a declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned and controlled AF Holdings. In the same declaration, HANSMEIER falsely and misleadingly claimed that "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files of any past client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing websites.

        h.      On or about September 30, 2013, STEELE falsely and misleadingly testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.) that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer

<u>U.S. v. Paul Hansmeier et al.</u>

document. STEELE further testified, falsely and misleadingly, that he had "no ownership interest, never had, in Prenda Law. I didn't set up a company, bogus or otherwise, AF Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their involvement in the scheme. During this hearing, HANSMEIER (acting as an attorney for AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth above.

        i.    On or about January 28, 2014, STEELE caused M.L. to falsely and misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262 (N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and HANSMEIER did not own any part of AF Holdings. M.L. further falsely and misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and in the related copyright litigation.

All in violation of Title 18, United States Code, Section 371.

## <u>FORFEITURE ALLEGATIONS</u>

46.    Counts 1-17 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

35

U.S. v. Paul Hansmeier et al.

47.    As the result of the offenses alleged in Counts 1-16 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1-16 of this Indictment.

48.    As a result of the offenses alleged in Count 17 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the violations alleged in Count 17 of this Indictment, or any property traceable to such property.

49.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and by Title 18, United States Code, Section 982(b)(1).


A TRUE BILL


_____          _____

UNITED STATES ATTORNEY                        FOREPERSON

# COURT MINUTES/ORDER

## United States Magistrate Judge Alicia O. Valle

Date: 12/16/2016   Time: 11:00am

Defendant: John L. Steele (J)   J#: _____   Case #: 16-6526-Valle

AUSA: Bruce Brown   Attorney: _____

Violation: Removal out of the District of Minnesota [19:1359; 1341; 1343; 1956(h); 371]

Proceeding: Initial Appearance   CJA Appt: _____

Bond/PTD Held: ☐ Yes ☐ No   Recommended Bond: _____

Bond Set at: $100,000 -10% & $100,000 PSB   Co-signed by: Friend or family member by 12/19/16

| | | |
|---|---|---|
| ☑ | Surrender and/or do not obtain passports/travel docs | Language: _____ |
| ☑ | Report to PTS as _directed_/or _____ x's a week/month by phone: _____ x's a week/month in person | **Disposition:** Govt. moves to unseal the indictment out of Minnesota- Granted |
| ☑ | Random urine testing by Pretrial Services _____ Treatment as deemed necessary | Deft advised of charges |
| ☐ | Refrain from excessive use of alcohol | Deft is an attorney and is going to represent himself |
| ☐ | Participate in mental health assessment & treatment | |
| ☑ | Maintain or seek full-time employment/~~education~~ NO access to personal identifiers | Court sets bond at $100,000 PSB and |
| ☑ | No contact with victims/witnesses | $100,000 – 10% bond and allows the |
| ☑ | No firearms | deft to be released before money is |
| ☐ | Not to encumber property | posted. |
| ☐ | May not visit transportation establishments | Deft waives removal – waiver signed |
| ☐ | Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____ | Order of removal entered |
| ☐ | Allowances: Medical needs, court appearances, attorney visits, religious, employment | |
| ☑ | Travel extended to: SDFL + Minnesota (for Court) | |
| ☑ | Other: maintain current address | |

**NEXT COURT APPEARANCE**   Date: _____   Time: _____   Judge: _____   Place: _____

Report RE Counsel: Obtain permission from pretrial to travel elsewhere

PTD/Bond Hearing: _____

Prelim/Arraign or Removal: _____

Status Conference RE: _____

Check if Applicable: ☐   The motion to continue to permit the defendant to hire counsel is GRANTED. The time from today through the rescheduled date is excluded from the deadline for trial as computed under the Speedy Trial Act, since the ends of justice served by granting this continuance outweigh the interests of the defendant and the public in speedy trial.

D.A.R. 12:23:45   Time in Court: 10 min

Page: _____

39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-6526-VALLE


UNITED STATES OF AMERICA
          Plaintiff

vs

JOHN L. STEELE,
                Defendant
_____/

## O R D E R

THIS CAUSE is before the Court for the initial appearance of the above-named defendant(s) on a SEALED INDICTMENT out of the District of Minnesota.

UPON ORAL motion of the government in open court that the case be unsealed, it is hereby

ORDERED AND ADJUDGED that the SEALED INDICTMENT out of the District of Minnesota be unsealed.

DONE AND ORDERED at Fort Lauderdale, Florida this 16th day of December 2016.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE


cc: All Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 16-6526-VALLE

UNITED STATES OF AMERICA
             Plaintiff,

 vs.


JOHN L. STEELE,
                  Defendant.
_____/

## WAIVER OF REMOVAL HEARING

I ,John L. Steele, charged in a proceeding pending in the District of Minnesota, with an Indictment charging 18:1349; 18:1341; 18:1343; 18:1956(h); 19:371, and having been arrested in the Southern District of Florida and taken before Alicia O. Valle, a United States Magistrate Judge for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned magistrate judge and consent to the issuance of a warrant for my removal to the District of Minnesota where the aforesaid charge is pending against me.


_____
Dated

_____
Signature of Defendant


_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

41

(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: <u>16-6526-VALLE</u>

UNITED STATES OF AMERICA:
                    Plaintiff,

v.                                                  **JAIL #**

JOHN L STEELE,
                    Defendant,

_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ _100,000 PSB_ _co-signed by friend or family member_.

_by 12/19/16_

### <u>STANDARD CONDITIONS OF BOND</u>

The conditions of this bond are that the defendant:

    1.  Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2.  May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3.  May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4.  Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5.  The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    6.  Shall not commit any act in violation of state or federal laws.

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE TWO**

### SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ✓ *as directed or__ time(s) a week in person and__ time(s) a week by telephone;*

✓ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

✓ g. Maintain or actively seek full-time employment;   No access to personal identifiers

__ h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✓ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant** *based upon his/her ability to pay* ( ) or **paid for by Pretrial Services** ( ).

    __ **Curfew:** You are restricted to your residence every day from___ to____, or as directed by the Court.

    __**Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment,** ( ) **court appearances,** ( ) **attorney visits or court ordered obligations, and** ( ) **other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.

    You are restricted to the halfway house at all times except for: ( ) **employment;** ( ) **education;** ( ) **religious services;** ( ) **medical, substance abuse, or mental health treatment;** ( ) **attorney visits;** ( ) **court appearances;** ( ) **court ordered obligations;** ( ) **reporting to Pretrial Services; and** ( ) **other** _____

✓ p. May travel to and from: SDFL & Minnesota , and must notify Pretrial Services of travel plans before leaving and upon return.   for court

✓ q. Comply with the following additional conditions of bond:

    maintain current address;

    obtain permission from pretrial to travel elsewhere.

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE THREE**

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE FOUR**

### PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

### SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

---

**NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing.**

---

### DEFENDANT

Signed this _16_ day of _December_ , 20 _16_ at _Ft Lauderdale_ Florida

Signed and acknowledged before me:

DEFENDANT: (Signature) _____

_____ Witness _____ City _____ State

### CORPORATE SURETY

Signed this _____ day of _____, 20 ___ at _____, Florida

SURETY: _____      AGENT: (Signature) _____

_____ City _____ State      PRINT NAME: _____

### INDIVIDUAL SURETIES

Signed this ___ day of _____, 20 ___ at _____, Florida        Signed this ___ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _K8St_____        SURETY: (Signature) _____

PRINT NAME: _KERRY E STEELE_        PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _ex-wife_        RELATIONSHIP TO DEFENDANT: _____

_Miami Beach_        _FL_
_____ City _____ State        _____ City _____ State

Signed this ___ day of _____, 20 ___ at _____, Florida        Signed this ___ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _____        SURETY: (Signature) _____

PRINT NAME: _____        PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____        RELATIONSHIP TO DEFENDANT: _____

_____ City _____ State        _____ City _____ State

### APPROVAL BY THE COURT

Date: _DEC 19, 2016_

**Alicia O. Valle**
**UNITED STATES MAGISTRATE JUDGE**

(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-6526-VALLE

UNITED STATES OF AMERICA:

                      Plaintiff,

v.                                           **JAIL #**

JOHN L STEELE,

                      Defendant,

_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ _100,000 PSB___ co-signed by friend or family member_____.

### STANDARD CONDITIONS OF BOND    by 12/19/16

The conditions of this bond are that the defendant:

    1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    6. Shall not commit any act in violation of state or federal laws.

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE TWO**

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ✓ *as directed or__ time(s) a week in person and__ time(s) a week by telephone;*

✓ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

✓ g. Maintain or actively seek full-time employment;  *No access to personal identifiers*

__ h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✓ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant based upon his/her ability to pay ( ) or paid for by Pretrial Services ( ).**

    __ **Curfew:** You are restricted to your residence every day from___ to____, or as directed by the Court.

    __ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment,** ( ) **court appearances,** ( ) **attorney visits or court ordered obligations, and** ( ) **other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.

    You are restricted to the halfway house at all times except for: ( ) **employment;** ( ) **education;** ( ) **religious services;** ( ) **medical, substance abuse, or mental health treatment;** ( ) **attorney visits;** ( ) **court appearances;** ( ) **court ordered obligations;** ( ) **reporting to Pretrial Services; and** ( ) **other** _____

✓ p. May travel to and from: SDFL & Minnesota _____, and must notify Pretrial Services of travel plans before leaving and upon return. *for court*

✓ q. Comply with the following additional conditions of bond:

    maintain current address;

    obtain permission from pretrial to travel elsewhere.

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE THREE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE FOUR**

### PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

### SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

| NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing. |
| --- |

### DEFENDANT

Signed this **16** day of **December** , 20 **16** at **Ft Lauderdale** Florida

Signed and acknowledged before me:

DEFENDANT: (Signature) _____

_____ Witness    _____ City    _____ State

### CORPORATE SURETY

Signed this _____ day of _____ , 20 ___ at _____ , Florida

SURETY: _____    AGENT: (Signature) _____

PRINT NAME: _____

_____ City    _____ State

### INDIVIDUAL SURETIES

Signed this ___ day of _____ , 20 ___ at _____ , Florida    Signed this ___ day of _____ , 20 ___ at _____ , Florida

SURETY: (Signature) **KSSL**    SURETY: (Signature) _____

PRINT NAME: **KERRY L STEELE**    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: **ex-wife**    RELATIONSHIP TO DEFENDANT: _____

**Miami BEACH** City **FL** State    _____ City    _____ State

Signed this ___ day of _____ , 20 ___ at _____ , Florida    Signed this ___ day of _____ , 20 ___ at _____ , Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____ City    _____ State    _____ City    _____ State

### APPROVAL BY THE COURT

Date: **DEC 19, 2016**    _____

**Alicia O. Valle**
**UNITED STATES MAGISTRATE JUDGE**



Case Case 0:16-cv-06526-AD Document Entered on Flusd) Docket 12/19/2016 Page 51 of 63
(CM/ECF RESTRICTED)

**DEFENDANT: JOHN L STEELE,**
**CASE NUMBER: 16-6526-VALLE**
**PAGE FIVE**

## ADDRESS AND CONTACT INFORMATION
## FOR DEFENDANT AND SURETIES

As indicated in condition 3 of this bond, the defendant "May not change his or her present address as recorded on this bond without prior permission in writing from the court." The current addresses of the defendant and sureties are as indicated below:

### DEFENDANT

PRINT NAME: _John Steele_

STREET ADDRESS: _216 N Margate Cortez Dr_

_Margate_ _FL_ _33068_
City · State · Zip

TELEPHONE: _303-520-8080_

### CORPORATE SURETY

SURETY: _____

AGENT: _____

STREET ADDRESS: _____

_____
City · State · Zip

TELEPHONE: _____

### INDIVIDUAL SURETIES

PRINT NAME: _Kerry E. Steele_    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _Ex-Wife_    RELATIONSHIP TO DEFENDANT: _____

STREET ADDRESS: _90 Alton Rd #511_    STREET ADDRESS: _____

_Miami Beach_ _FL_ _33139_    _____
City · State · Zip    City · State · Zip

TELEPHONE: _814-203-5183_    TELEPHONE: _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

STREET ADDRESS: _____    STREET ADDRESS: _____

_____    _____
City · State · Zip    City · State · Zip

TELEPHONE: _____    TELEPHONE: _____

(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: <u>16-6526-VALLE</u>

UNITED STATES OF AMERICA:
                Plaintiff,

v.                                       JAIL #

JOHN L STEELE,
                Defendant,
_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ 100,000 − 10%10 _____.

### <u>STANDARD CONDITIONS OF BOND</u>

The conditions of this bond are that the defendant:

1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

6. Shall not commit any act in violation of state or federal laws.

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ✓ as directed or __ time(s) a week in person and __ time(s) a week by telephone;

✓ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

✓ g. Maintain or actively seek full-time employment;   *No access to personal identifiers*

__ h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✓ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant based upon his/her ability to pay** ( ) or paid for by Pretrial Services ( ).
    __ **Curfew:** You are restricted to your residence every day from ___ to ___, or as directed by the Court.
    __ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment,** ( ) **court appearances,** ( ) **attorney visits or court ordered obligations, and** ( ) **other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.
    You are restricted to the halfway house at all times except for: ( ) **employment;** ( ) **education;** ( ) **religious services;** ( ) **medical, substance abuse, or mental health treatment;** ( ) **attorney visits;** ( ) **court appearances;** ( ) **court ordered obligations;** ( ) **reporting to Pretrial Services; and** ( ) **other** _____

✓ p. May travel to and from: SDFL + Minnesota, , and must notify Pretrial Services of travel plans before leaving and upon return.   for Court

✓ q. Comply with the following additional conditions of bond:
    maintain current address;
    obtain permission from pretrial to travel elsewhere

53

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE THREE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE FOUR

### PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

### SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

**NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing.**

### DEFENDANT

Signed this _16_ day of _December_, 20 _16_ at _Ft Lauderdale_ Florida

Signed and acknowledged before me:      DEFENDANT: (Signature) _____

_____     _____     _____
Witness            City            State

### CORPORATE SURETY

Signed this _____ day of _____, 20 ____ at _____, Florida

SURETY: _____     AGENT: (Signature) _____

_____     _____     PRINT NAME: _____
City            State

### INDIVIDUAL SURETIES

Signed this ____ day of _____, 20 ___ at _____, Florida    Signed this ____ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____    _____    _____    _____
City      State      City      State

Signed this ____ day of _____, 20 ___ at _____, Florida    Signed this ____ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____    _____    _____    _____
City      State      City      State

### APPROVAL BY THE COURT

Date: _____

_____
Alicia O. Valle
UNITED STATES MAGISTRATE JUDGE

```
Court Name: SOUTHERN DISTRICT OF FLORIDA
Division: 0
Receipt Number: FLS000008694
Cashier ID: DimasRod
Transaction Date: 12/16/2016
Payer Name: John Lawrence Steele
------------------------------------
TREASURY REGISTRY
 For: John L. Steele
 Case/Party: D-FLS-0-16-MJ-006526-001
 Amount:       $10,000.00
------------------------------------
PAPER CHECK CONVERSION
 Check/Money Order Num: 0036307
 Amt Tendered: $10,000.00
------------------------------------
Total Due:      $10,000.00
Total Tendered: $10,000.00
Change Amt:     $0.00

10% Cash Bond

Case Number 16-mj-6526

Remitter: John Lawrence Steele

216 N. Cortez Dr.
Margate, FL 33068

Returned check fee $53


Checks and drafts are accepted
subject to collection and full
credit will only be given when the
check or draft has been accepted by
then financial institution on which
it was drawn.
```

56

(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-6526-VALLE

UNITED STATES OF AMERICA:
                 Plaintiff,

v.                                    JAIL #

JOHN L STEELE,
                 Defendant,
_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ 100,000 - 10%6 _____.

## STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

    1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    6. Shall not commit any act in violation of state or federal laws.

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ✓ *as directed or__ time(s) a week in person and__ time(s) a week by telephone;*

✓ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

✓ g. Maintain or actively seek full-time employment; *No access to personal identifiers*

__ h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✓ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant** *based upon his/her ability to pay* ( ) or paid for by Pretrial Services ( ).
   __ **Curfew:** You are restricted to your residence every day from___ to___, or as directed by the Court.
   __ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment,** ( ) **court appearances,** ( ) **attorney visits or court ordered obligations, and** ( ) **other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.
   You are restricted to the halfway house at all times except for: ( ) **employment;** ( ) **education;** ( ) **religious services;** ( ) **medical, substance abuse, or mental health treatment;** ( ) **attorney visits;** ( ) **court appearances;** ( ) **court ordered obligations;** ( ) **reporting to Pretrial Services; and** ( ) **other** _____

✓ p. May travel to and from: SDFL + Minnesota, , and must notify Pretrial Services of travel plans before leaving and upon return. *for Court*

✓ q. Comply with the following additional conditions of bond:
   maintain current address;
   obtain permission from pretrial to travel elsewhere

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE THREE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: JOHN L STEELE,
CASE NUMBER: 16-6526-VALLE
PAGE FOUR

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

> **NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing.**

### DEFENDANT

Signed this ___16___ day of ___December___, 20 _16_ at ___Ft Lauderdale___ Florida

Signed and acknowledged before me:  DEFENDANT: (Signature) _____

_____  _____  _____
Witness  City  State

### CORPORATE SURETY

Signed this _____ day of _____, 20 ___ at _____, Florida

SURETY: _____  AGENT: (Signature) _____

_____  _____  PRINT NAME: _____
City  State

### INDIVIDUAL SURETIES

Signed this ____ day of _____, 20 ___ at _____, Florida    Signed this ____ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____  _____    _____  _____
City  State    City  State

Signed this ____ day of _____, 20 ___ at _____, Florida    Signed this ____ day of _____, 20 ___ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____  _____    _____  _____
City  State    City  State

## APPROVAL BY THE COURT

Date: _____

_____
Alicia O. Valle
UNITED STATES MAGISTRATE JUDGE

```
Court Name: SOUTHERN DISTRICT OF FLORIDA
Division: 0
Receipt Number: FLS000008694
Cashier ID: DimasRod
Transaction Date: 12/16/2016
Payer Name: John Lawerence Steele
------------------------------------
TREASURY REGISTRY
 For: John L. Steele
 Case/Party: D-FLS-0-16-MJ-006526-001
 Amount:      $10,000.00
------------------------------------
PAPER CHECK CONVERSION
 Check/Money Order Num: 0036307
 Amt Tendered: $10,000.00
------------------------------------
Total Due:      $10,000.00
Total Tendered: $10,000.00
Change Amt:     $0.00

10% Cash Bond

Case Number 16-mj-6526

REmitter: John Lawrence Steele

216 N. Cortez Dr.
Margate, FL 33068

Returned check fee $53


Checks and drafts are accepted
subject to collection and full
credit will only be given when the
check or draft has been accepted by
then financial institution on which
it was drawn.
```

FORM 12848R-0612
001100921

CASHIER'S CHECK

PNC BANK
PNC Bank, National Association
Florida, Bank 001

No. 08363307

8-9/430

DATE DECEMBER 16, 2016

PAY TO THE
ORDER OF CLERK OF THE CIRCUIT COURT                    $   10,000.00

TEN THOUSAND AND 00 / 100***************************************************** DOLLARS

JOHN LAWRENCE STEELE
REMITTER

PNC Bank, National Association

OFFICIAL SIGNATURE

FSC
MIX
Paper from
responsible sources
FSC® C101537

⑆08363307⑆ ⑆043000096⑆ ⑈026403363⑈

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-6526-VALLE

UNITED STATES OF AMERICA
            Plaintiff,

        v.

JOHN L. STEELE,

                Defendant.
_____/

## ORDER OF REMOVAL

It appearing that in the District of Minnesota, an Indictment was filed against the above-named defendant on a charge of 18:1349; 18:1341; 18:1343; 1956(h) and 18:1371 and that the defendant was arrested in the Southern District of Florida and was given a hearing before United States Magistrate Judge Alicia O. Valle at Fort Lauderdale, Florida, which officially committed the defendant for removal to the Southern District of New York, it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge Alicia O. Valle for removal and posted bail in the amount of $ 100,000-10% + 100,000 PSB  which was approved by the United States Magistrate Judge Alicia O. Valle, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bail bond furnished by the defendant, and it is further ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Fort Lauderdale, Florida, this 16th day of December, 2016.


_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE


cc:  Miami, Financial